**DATA–LINK SYSTEMS, INC., Plaintiff,**

v.

**DATA LINE SERVICE COMPANY, INC., Defendant.**

**No. S90–230 (AS).**

United States District Court, N.D. Indiana, South Bend Division.

May 28, 1992.

David R. Melton and Seth D. Linfield of Barnes & Thornburg, South Bend, IN and Arthur J. Schwab and Pamela A. McCallum, Pittsburgh, PA, for plaintiff.

William Knowlton, Covina, CA, Jay Taylor and John F. Prescott, Jr., Indianapolis, IN, and Edward Kalamaros of Kalamaros and Associates, South Bend, IN, for defendant.

### MEMORANDUM AND ORDER

PIERCE, United States Magistrate Judge.

On January 30, 1992, Judge Sharp ordered all trial counsel in this case to meet in an attempt to resolve all outstanding discovery disputes and to thereafter submit a full written report to the court as to any unresolved discovery disputes and the reasons why such matters were not resolved. Trial counsel subsequently met in the court's conference room on February 20, 1992. Their later reports to the court, unfortunately, indicate that nothing was resolved. More still, it appears that the discovery conference has

become just one more source of acrimony between counsel. Plaintiff accuses defendant's counsel of reneging on agreements reached at the conference, and defendant asserts that everything its counsel agreed to do at the conference has been done. The only thing which can be said with certainty at this juncture is that the parties have now complied with this court's Local Rule 13. The court will, accordingly, address the outstanding discovery disputes after wading through the latest series of charges and counter-charges between counsel.

The present controversy involves two motions by plaintiff, Data–Link Systems, Inc. ("Data–Link"), to compel discovery and for sanctions under Fed.R.Civ.P. 37, and a motion for protective order by defendant Data Line Service Company, Inc. ("Data Line"). In the first motion to compel, filed on December 31, 1991, Data–Link seeks an order requiring Data Line to comply with certain of the requests in its revised Sixth Request for Production of Documents; compelling Data Line to produce or re-produce several of its officers or employees for depositions in either South Bend, Indiana, or Pittsburgh, Pennsylvania; and imposing sanctions upon Data Line for failing to produce the requested documents in time for the depositions previously scheduled in Covina, California during the week of December 16, 1991. In the second motion, filed on January 17, 1992, Data–Link requests an order compelling Data Line to produce Mr. Fran Watson for deposition, and imposing further sanctions under Rule 37. Data Line's motion for protective order seeks to block that deposition.

### Background

On or about April 15, 1991, Data–Link served its Sixth Request for Production of Documents on Data Line (Dkt. 134). Data Line served Data–Link with its objections and responses to that request for production on or about May 13, 1991 (Dkt. 149). On June 27, 1991, Data–Link filed its second motion to compel discovery which sought, among other things, an order compelling Data Line to produce documents responsive to 22 of the document requests (Dkt. 173). During a pretrial conference conducted on the same date, Judge Sharp ordered that

discovery be closed as of January 31, 1991 (Dkt. 176).

In an Order entered on September 18, 1991, Judge Sharp addressed Data–Link's motion to compel with respect to its Sixth Request for Production of Documents as follows:

The plaintiff wants the defendant to be compelled to produce documents relating to the defendant's finances and financial gains from its alleged servicing of Mera-Bank, and documents regarding a plan to enhance the defendant's ULS software. This court sees the latter documents as unnecessary given its order regarding the ULS source code; the plaintiff's motion to compel their production (Requests 19b and 21) is therefore denied.

The court is aware that the plaintiff is attempting to establish damages arising from the defendant's alleged breach of contract by calculating the defendant's profits therefrom. This court has carefully reviewed the defendant's responses to the plaintiff's *Sixth* (emphasis added) Request for Production of Documents which sets out no less than 22 Requests for Production filed by the plaintiff and the defendant's responses thereto. As framed, the defendant's responses are well taken. If this plaintiff were to refine and narrow these requests it may do so instanter but at present these requests have many of the earmarks of harassment. SO ORDERED.

(Dkt. 189—Order of September 18, 1991, p. 9.)

On November 14, 1991, Data–Link served Data Line with its Revised Sixth Request for Production of Documents, a Revised Second Set of Interrogatories, and notice scheduling a number of depositions of Data Line personnel or witnesses in Covina, California, during the week of December 16, 1991 (Dkt. 197). Thereafter, on November 27, 1991, counsel for Data–Link wrote to counsel for Data Line, stating:

[W]e insist that we receive your answers to our interrogatories and production of documents requested in our sixth request for documents prior to the deposition so that the depositions are meaningful and can

proceed expeditiously. This does not impose any additional burden on Data Line but merely requires Data Line to comply with its obligations under rules governing discovery. Your answers to the interrogatories and documents responsive to our document request are due no later than Monday, December 16, 1991. We would appreciate your cooperation in getting us this information on or before Wednesday, December 11, 1991.

(Dkt. 262, Report of Data–Link Regarding Discovery Conference, Ex. B.) Data–Link indicates that Data Line did not respond to this letter, but instead mailed certain of the requested documents to Data–Link's counsel in Pittsburgh, Pennsylvania, on December 16, 1991, and applied to the court on the same date for a seven-day extension of time in which to serve answers to Data–Link's interrogatories. Data Line's tardiness, according to Data–Link, prevented Data–Link from taking meaningful depositions of Data Line's witnesses during the week of December 16.

### Data–Link's Revised Sixth Request for Production of Documents

█ Data–Link's motion to compel of December 31, 1991 seeks an order compelling Data Line to produce documents responsive to Item Nos. 3, 4, 5 and 6 of Data–Link's Revised Sixth Request for Production of Documents. These items, together with Data Line's responses, are as follows:

3. All documents and other sources of information referring or pertaining to actual operating costs or expenses incurred in connection with the MeraBank Account.

*RESPONSE*

The defendant objects to this request for production because it is overly broad and does not specifically describe the information sought with reasonable particularity. Without waiving this objection, the defendant will endeavor to identify any documents it believes responsive to this description which have not already been produced.

4. All documents and other sources of information relating to Defendant Data Line's accounting system maintained for the MeraBank Account including, but not limited to, charts of accounts and accounting manuals.

*RESPONSE*

The defendant objects to this request for production because it is overly broad and does not specifically describe the information sought with reasonable particularity. Without waiving this objection, to the best of the defendant's information, knowledge and belief, there are no documents responsive to this request beyond those which may be produced pursuant to paragraph 3 above.

5. All documents and other sources of information relating to Defendant Data Line's revenues, profits or losses on a monthly and annual basis derived directly or indirectly from the MeraBank Account.

*RESPONSE*

The defendant objects to this request for production because it is overly broad and does not specifically describe the information sought with reasonable particularity. Without waiving this objection, to the best of the defendant's information, knowledge and belief, there are no documents responsive to this request beyond those which may be produced pursuant to paragraph 3 above.

6. All monthly and annual financial statements, including, but not limited to, income statements, balance sheets and cash flow statements prepared by or for Defendant Data Line that in any way relate to Defendant's revenues, profits or losses derived directly or indirectly from the MeraBank Account. The scope of this request includes financial statements that include information which reflect Mera-Bank Account activity as part of a more comprehensive financial report of Defendant Data Line's financial condition or net worth.

*RESPONSE*

The defendant objects to this request for production because it is overly broad and does not specifically describe the information sought with reasonable particularity. Without waiving this objection, the defendant states that it does not maintain any documents which specifically refer to or

break out 'revenues, profits or loss derived directly or indirectly from the MeraBank Account.' It is apparent to the defendant that the plaintiff is attempting to back door into the acquisition of documents sought by the plaintiff by its (first) Sixth Request for Production of Documents, and which the Court has determined the plaintiff may not have. Consequently, defendant incorporates all of its earlier objections to the plaintiff's (first) Sixth Request for Production of Documents with respect to financial records, including the fact that the information sought is neither admissible nor reasonably calculated to lead to the discovery of admissible evidence. The request is further objectionable as being unduly burdensome and harassing.

Although the foregoing document requests are sweeping in their scope, the court, nevertheless, finds that they describe the documents and information sought with reasonable particularity; that they are not overly broad in light of the issues in the case; and that they appear reasonably calculated to lead to the discovery of admissible evidence. Contrary to Data Line's assertion, the above items do reflect an effort by Data–Link to refine and narrow their requests, as suggested in Judge Sharp's Order of September 18, 1991. Accordingly, Data Line shall fully comply with Item Nos. 3, 4, 5 and 6 of Data–Link's Revised Sixth Request for Production of Documents, if it has not already done so, on or before June 10, 1992. However, because of Data–Link's failure to submit its revision "instanter," as Judge Sharp's Order required, Data–Link shall bear any administrative expenses (not to include attorney's fees) reasonably incurred by Data Line in complying with the requests.

■ Data–Link also seeks to compel production of all documents requested in Item No. 19 of its Revised Sixth Request for Production of Documents, as "specifically identified" in its letter to Data Line of December 11, 1991. (Data–Link's Motion to Compel of December 31, 1991, p. 18.) Item 19 requested the following:

All documents and other sources of information responsive to Plaintiff's First, Second, Third, Fourth, Fifth and Sixth Requests for Production of Documents that have not already been produced to Plaintiff Data–Link.

As previously noted, counsel for Data–Link wrote to Data Line's counsel in a letter dated November 27, 1991, stating that Data–Link "insist[ed]" that Data–Link receive the documents requested in its Sixth Request for Documents prior to the depositions which had been scheduled during the week of December 16, 1991. Data–Link added: "We would appreciate your cooperation in getting us this information on or before Wednesday, December 11, 1991." (Dkt. 262, Report of Data–Link Regarding Discovery Conference, Ex. B.) Data–Link then wrote to Data Line on December 11, 1991, the same day it wanted the documents produced, instructing Data Line on what kinds of documents it considered to be included in Item 19.

The court fully agrees with Data Line's objection to this request. First, Item 19 contains a request for documents responsive to Data–Link's Sixth Request for Production. Data–Link's motion to compel with respect to that request was previously denied by Judge Sharp in his Order of September 18, 1991. In that Order, Data–Link was given permission to "refine and narrow" the content of its Sixth Request for Production; it was not given permission to reiterate that request. Moreover, to the extent that Item No. 19 merely seeks documents within the scope of Data–Link's previous requests, which were in existence but not produced at the time of Data Line's previous responses, Item No. 19 would be unnecessary; Data Line is under a continuing obligation to produce any such documents which it may have failed to produce previously. But, to the extent that Data–Link, at this, the eleventh hour, is seeking to expand the scope of its earlier requests to include documents generated after Data Line's previous responses, Item 19 would clearly represent nothing more than harassment. Accordingly, Data–Link's motion to compel with respect to Item 19 of its Revised Sixth Request for Production is denied.

*Depositions of Data Line Personnel*

Data–Link further seeks an order compelling Data Line to produce four of its officers

or employees who were previously unavailable or sick at the time of the depositions noticed by Data–Link in Covina, California, during the week of December 16, 1991. Those individuals include: Kennard Hill, CEO of Data Line; Rick Craven, Account Manager of the MeraBank account; Dennis Hogan, Chief Financial Officer of Data Line; and Teri Carstenson, General Manager of Data Line with responsibility for the ULS upgrade project. The court will require Data Line to make these individuals available for depositions in Covina, California. Each party shall bear its own expenses for the depositions.

Data–Link's motion also requests that the court order Data Line to reproduce Mr. Blaney, who verified Data Line's answers to interrogatories, together with Mr. Stephan, "and any other witnesses with knowledge of the documents sought" by Data–Link, at Data Line's expense. The court notes that Data–Link has already subjected Mr. Blaney and Mr. Stephan to two deposition sessions each. Data–Link apparently wants to depose each of them a third time because of Data Line's asserted failure to produce documents in time for their depositions scheduled in Covina, California, during the week of December 16, 1991. For the reasons hereinafter discussed in connection with Data–Link's request for sanctions, Data Line will be required to produce these individuals for depositions in Covina, California, with both parties to bear their own expenses. Data–Link's request that Data Line produce "any other witnesses with knowledge of the documents sought," is denied.

There remains the separate matter of Data–Link's second motion to compel, which demands that Data Line produce Mr. Fran Watson for deposition, and Data Line's motion for protective order with respect to that deposition. Data–Link asserts that, in spite of the issuance of proper notices for Mr. Watson's deposition, Data Line has failed and/or refused to make him available. Data Line asserts that Data–Link should be barred from taking Mr. Watson's deposition because of the alleged misconduct of Data–Link's counsel, Pamela McCallum, in making direct contact with Mr. Watson, a Data Line employee, without the knowledge and presence of Data Line's counsel. Having fully considered the parties' respective accusations, the court will require Data Line to make Mr. Watson available for deposition by Data–Link in Covina, California. Each side shall bear its own expenses with respect to that deposition. Data Line's motion for protective order is denied.

### Sanctions

■ One of the principal controversies between the parties relates to Data Line's asserted failure to produce documents, pursuant to Data–Link's Revised Sixth Request for Production, in time for the depositions of Data Line personnel which Data–Link had scheduled in Covina, California, during the week of December 16, 1991. In this regard, the court finds that Data–Link's timing of the document production so close to the depositions was unreasonable. Data Line was under no legal obligation to physically place the documents in the hands of Data–Link's counsel, upon his or her arrival in Covina, California, prior to the commencement of the depositions. All Data Line was required to do was to "serve" its response to the document requests by mailing its response to counsel for Data–Link within 30 days, in accordance with Fed.R.Civ.P. 33(a) and 5(b). The exclusion of Saturdays and Sundays from the end of the time calculation, see Fed.R.Civ.P. 6(a), means that the response of Data Line, which was mailed on December 16, 1991, was timely. If Data–Link did not receive the documents in California in time to make its scheduled depositions "meaningful," its misfortune cannot be charged against Data Line.

At the same time, it is evident that Data Line deliberately allowed Data–Link to go forward with the depositions, knowing that Data–Link wanted to have the documents (and interrogatory answers) in California ahead of time, while remaining silent and secure behind its technical compliance with the rules of procedure. Data Line's conduct in this regard is no more righteous than that of Data–Link. Still, the court is convinced that it was the unreasonableness of Data–Link's scheduling, not Data Line's clever silence, which was ultimately responsible for

Data–Link's trouble and expense. Under these circumstances, Data Line shall be required to make Kennard Hill, Rick Craven, Dennis Hogan, Teri Carstenson, Mr. Blaney, Mr. Stephan and Fran Watson available for depositions in Covina, California, at times designated by Data–Link, no later than June 19, 1992. The parties shall bear their own expenses in connection with the depositions.

**SO ORDERED.**